UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ADELINE E. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-00446-DBH |
| | ) | |
| CITY OF BANGOR, MAINE, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Plaintiff Adeline Richards commenced this civil action against her former employer,

Defendant City of Bangor, alleging age- and disability-related discrimination, workplace

harassment, and constructive discharge.  Defendant has filed a motion to dismiss on the ground

that Plaintiff did not timely institute her action.  Defendant has also filed a motion to strike

certain exhibits offered by Plaintiff in opposition to the motion.  The Court referred the motions

for report and recommendation.  I now recommend that the Court grant, in part, the motion to

dismiss and sustain the evidentiary objection found in the motion to strike that relates to opinion

evidence proffered by Plaintiff.

**THE PLEADINGS**

Plaintiff alleges her age is in excess of 70 years and that she experienced a number of

serious health problems in 2007 and 2008, including high blood pressure, migraines, and vertigo.

According to Plaintiff's allegations, her supervisor within Defendant's Health and Community

Services Department began to make inappropriate and highly offensive comments to her about

her age and medical condition, in the presence of coworkers.  This treatment commenced in

2008.  In that year, Defendant also reassigned Plaintiff to a new position.  Plaintiff left work on

medical leave between January and April 2009.  Upon her return, her supervisor allegedly made more offensive statements and placed Plaintiff on unpaid administrative leave on two occasions. Plaintiff maintains that circumstances became unbearable and she was compelled to resign in June 2009.  (Am. Compl. ¶¶ 4-15, Elec. Case File No. 5-5.)

Plaintiff timely filed a charge of discrimination with the Maine Human Rights Commission with the assistance of an attorney and that process exhausted with the issuance of a right to sue notice.  (Id. ¶¶ 16-17.)  Plaintiff *pro se* filed suit against Defendant on August 25, 2011, in the Maine Superior Court.  The original *pro se* complaint contained two counts:  a count for age discrimination in violation of the Maine Human Rights Act and a count of disability discrimination under the Maine Human Rights Act.  (See ECF No. 5-1.)  Plaintiff, through counsel, filed her amended complaint on or about November 2, 2011.  The amended complaint recites the following six counts:

Count I—age discrimination in violation of the MHRA;

Count II—age discrimination in violation of the Age Discrimination in Employment Act;

Count IV[1]—disability discrimination in violation of the MHRA;

Count V—disability discrimination in violation of the Rehabilitation Act;

Count VI—disability discrimination in violation of the Americans with Disabilities Act;

Count VII—discrimination in violation of the Family Medical Leave Act.

(ECF No. 5-5.)

### ADDITIONAL FACTS OFFERED BY THE PARTIES

The Maine Human Rights Commission's Notice of Right to Sue is dated May 4, 2011. (Pl.'s Opposition, Ex. 1, ECF No. 10-2.)  In addition to sending Plaintiff the Notice, the Human Rights Commission also sent Plaintiff a letter dated May 26, 2011, informing her that her

---

[1] Plaintiff does not have a count III in her amended complaint.

"charges of discrimination have been administratively dismissed pursuant to Section 2.02(I) of the Commission's Procedural Rules, because of the issuance of a Right to Sue letter by the Maine Human Rights Commission."  (Id., Ex. 2, ECF No. 10-3.)  The letter also states that the "case is being dismissed pursuant to 5 M.R.S.A § 4612(6)."  (Id.)  In her amended complaint, Plaintiff alleges that the Maine Human Rights Commission issued its Notice of Right to Sue on May 26, 2011 (Am. Compl. ¶ 17), but the actual Notice is attached to Plaintiff's affidavit and it is clearly marked May 4, 2011 (ECF No. 10-2).

Plaintiff has filed an affidavit in which she explains that her subjective understanding was that she had ninety days from the May 26 letter to file a complaint in court.  (Aff. of Adeline Richards ¶ 4, ECF No. 10-1.)  She further states that her prior counsel advised her she had until August 24, 2011, to file a complaint.  (Id. ¶ 5.)  Plaintiff sought out advice from another lawyer after receiving yet another notice from the Equal Employment Opportunity Commission, this one received on June 21, 2011.  (Id. ¶ 6;  see also Pl.'s Ex. 4, EEOC Dismissal and Notice of Rights, ECF No. 10-5.)  That lawyer also informed Plaintiff that she had until August 24 to file her state claims, but added that she had until September 19 to file her federal claims.  (Richards Aff. ¶ 7; Pl.'s Ex. 5, Letter of Lisa Butler, Esq., ECF No. 10-6.)  Subsequently, Plaintiff contacted the Maine Human Rights Commission, was told she could not reopen her charges there, and eventually received a referral to the Maine Bar's Lawyer Referral Information Service. (Richards Aff. ¶¶ 8-10.)  According to her affidavit, Plaintiff received a referral on August 24, 2011, to her current counsel, Attorney Clifford.  Mr. Clifford was not available to take the case at that time, but offered some assistance to Plaintiff in drafting the complaint.  Plaintiff filed a *pro se* action in state court on August 25, 2011.  (Id. ¶ 11-12.)  Subsequently, Mr. Clifford agreed to represent Plaintiff and filed an appearance on her behalf.  (Id. ¶ 13.)

3

In addition to her own affidavit and the exhibits attached to it, Plaintiff has filed an affidavit from John Gause, Esq., Commission Counsel for the Maine Human Rights Commission, with attached exhibits, and a letter from Lisa Butler, Esq., informing Plaintiff that she had until August 24 to file.  Defendant objects to these exhibits and requests that they be stricken.  (Mot. to Strike, ECF No. 11.)  In his affidavit, Mr. Gause describes telephone calls and written correspondence with Plaintiff after the dismissal of her administrative charge, and he attests, in a concluding paragraph, as follows:

> I believe that a party or an attorney could reasonably interpret the May 26th letter as being the Commission's "right-to-sue" letter under 5 M.R.S.A. §4612(6) because it states, "[t]he case is being dismissed pursuant to 5 M.R.S.A. §4612(6)," and it informs the complainant that she "may continue to pursue this matter on your own in court."  In light of the potential for confusion that this case demonstrated, beginning in November 2011, the Commission discontinued the practice of issuing a separate dismissal letter with the "NOTICE OF RIGHT TO SUE" letter.  It now just issues the "NOTICE OF RIGHT TO SUE" letter.

(Gause Aff. ¶ 18.)  Butler's letter merely informed Plaintiff that she had until August 24, 2011, to pursue her state claims in court.  (ECF No. 10-2.)

### DISMISSAL STANDARDS

Defendant's motion to dismiss is based on a statute of limitations defense.  Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief";  and (3) "a demand for the relief sought."  Fed. R. Civ. P. 8(a).  Under Rule 12(b)(6), a defendant may advance a statute of limitation defense when the passage of time prevents a plaintiff from stating a claim for which relief can be granted.  However, the facts supporting the defense should be clear on the face of the plaintiff's pleadings.  Santana-Castro v.

<u>Toledo-Davila</u>, 579 F.3d 109, 113-14 (1st Cir. 2009).  If the movant introduces documents outside the pleadings to validate its defense, the court may only consider the extraneous material by converting the motion to dismiss into a motion for summary judgment, and it may only do that if it gives the parties "a reasonable opportunity to present all the material that is pertinent to the motion."  <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575 F.3d 10, 15 (1st Cir. 2009) (quoting Fed. R. Civ. P. 12(d)).  An exception to the conversion rule is recognized, however, which permits a court to consider documents that are not reasonably subject to challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into, or sufficiently referred to in the complaint.  <u>Greenier v. Pace Local No. 1188</u>, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).

DISCUSSION

The notices presented by Plaintiff in support of her opposition reveal that she received notice of her right to sue from the Maine Human Rights Commission (MHRC) on or about May 4, 2011, a separate dismissal letter from the MHRC on or about May 26, 2011, and notice of her right to sue from the Equal Employment Opportunity Commission on or about June 21, 2011. The docket otherwise reflects that Plaintiff commenced a civil suit on August 25, 2011, in state court.  In effect, Plaintiff filed her state court suit 91 days after the date the MHRC issued its dismissal letter and 113 days after the MHRC issued its Notice of Right to Sue, but within ninety days of the date stamped on the EEOC Notice.  The applicable statutes of limitations are discussed in relation to each of Plaintiff's statutory claims.  For reasons that follow, only the state law claims are barred by a statute of limitation.  As to these claims, Plaintiff fails to present a viable case for equitable tolling.

5

**A.** **The Limitation Period of the Maine Human Rights Act**

The Maine Human Rights Act (MHRA) imposes a limitation on the commencement of a civil action alleging unlawful discrimination. All such actions must be commenced "not more than either 2 years after the act of unlawful discrimination complained of or 90 days after any of the occurrences listed under section 4622, subsection 1, paragraphs A to D, whichever is later." 5 M.R.S. § 4613(2)(C). Here, Plaintiff alleges a constructive discharge as of June 2009, so her commencement of suit in August 2011 would not pass muster under the two-year limitation. Her MHRA claims could only be timely if she satisfied the ninety-day rule. The latest relevant occurrence listed under section 4622 was the May 4 issuance of the MHRC's Notice of Right to Sue, pursuant to section 4612(6). See id. § 4622(1)(C). Ninety days from that occurrence was not August 24, 2011, but August 2, 2011. Even allowing a handful of days for receipt of the Notice in the mail, Plaintiff did not file suit until August 25 and missed the August 2 deadline by a wide margin. Plaintiff's MHRA claims are subject to dismissal unless Plaintiff's request for equitable tolling somehow justifies tolling the limitation clock. I will return to the tolling question after addressing the limitations applicable to the federal claims.

**B.** **The Limitation Period of the Age Discrimination in Employment Act**

For most employees, including Plaintiff, the Age Discrimination in Employment Act (ADEA) imposes an administrative exhaustion requirement. Oscar Mayer & Co. v. Evans, 441 U.S. 750, 753 (1979); Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005). Under this scheme, a civil action "may be brought . . . against the respondent named in the [administrative] charge within 90 days after the date of the receipt of [a] notice [from the Commission]." 29 U.S.C. § 626(e). The ADEA's statutory reference to the "Commission" is a reference to the EEOC, not the MHRC. See Gonzalez-Marin v. Newark Pub. Sch., 109 Fed. Appx. 440 (1st Cir. 2004)

6

(unpublished *per curiam* op.) (citing section 626(e) and observing that the ADEA requires "that a civil action be brought against the respondent named in the charge within 90 days after the date of the <u>receipt</u> of notice from the Equal Employment Opportunity Commission that proceedings have been terminated") (emphasis in original).[2]

Plaintiff received the EEOC Notice sometime after its June 21, 2011, issuance date. Ninety days from June 21 was Monday, September 19, 2011.  Plaintiff filed her state court action within the prescribed period, though that action did not include a count under the ADEA. Plaintiff did not file her amended complaint, which included the ADEA count, until November 2011.  The question of whether the later filing relates back to the earlier filing date for purposes of the ADEA's limitation period is addressed in section F.

**C.     The Limitation Period of the Rehabilitation Act**

The Rehabilitation Act does not include a statute of limitation for claims pursued under Section 504, 29 U.S.C. § 794.  Consequently, federal courts borrow the most closely analogous state statute of limitation, provided that the limitation period of choice does not upset federal law or policy.  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 118 (1st Cir. 2003); <u>Murphy v. Timberlane Reg'l Sch. Dist.</u>, 22 F.3d. 1186, 1192-94 (1st Cir. 1994).  According to the Seventh Circuit, the state personal injury limitation is the appropriate limitation to apply to an employment discrimination case asserted under the Rehabilitation Act.  <u>Bush v. Commonwealth Edison Co.</u>, 990 F.2d 928, 933 (7th Cir. 1993) (using state personal injury limitation for a Rehabilitation Act claim of employment discrimination).  <u>Cf.</u> <u>Goodman v. Lukens Steel Co.</u>, 482 U.S. 656, 660-62 (1987) (applying state personal injury limitation period to employment discrimination claim advanced under 42 U.S.C. § 1981); <u>Wilson v. Garcia</u>, 471 U.S. 261, 276

---

[2]        It has been suggested that this language does not authorize commencement of a civil suit before a notice is received from the Commission, but the contrary rule has also been applied.  <u>E.g.</u>, <u>Holowecki v. Fed. Express. Corp.</u>, 440 F.3d 558, 563 & n.2 (2d Cir. 2006); <u>Julian v. City of Houston</u>, 314 F.3d 721, 726 & n.12 (5th Cir. 2002).

(1985) (applying state personal injury limitation period to claims of unlawful arrest and excessive force under 42 U.S.C. § 1983);  Ayala-Sepulveda v. Mun. of San German, 671 F.3d 24, 29 n.3 (1st Cir. 2012) (involving a civil rights employment discrimination claim and noting: "A claim under § 1983 is subject to the statute of limitations imposed on personal injury claims under state law.");  Nieves-Marquez, 353 F.3d at 118-19 (applying state personal injury limitation in an IDEA context);  but see McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 129-30 (4th Cir. 1994) (recognizing that five other circuits apply the state statute of limitation for personal injury claims and collecting cases, but parting ways to apply the limitation supplied by Virginia's Rights of Persons with Disabilities Act).  I recommend that the Court apply the Maine statute of limitation that governs personal injury actions, which would mean the applicable limitation period is six years and that Plaintiff's Rehabilitation Act claim is timely. See 14 M.R.S. § 752.

Defendant argues that the more appropriate measure would be to borrow the two-year limitation period of the Maine Human Rights Act.  (Mot. to Dismiss at 8-14.)  In my view, the MHRA is not particularly analogous to Section 504 of the Rehabilitation Act, for limitation purposes, when one considers that there is no requirement under the Rehabilitation Act to exhaust administrative remedies and the limitation period applied to MHRA claims is customarily extended in reference to an administrative process.  Given this major discrepancy, Maine's limitation period on personal injury actions is the more apt common law limitation to borrow.  Plaintiff's disability discrimination claim in count V is not subject to dismissal based on Defendant's statute of limitations defense.

**D.      The Limitations Period of the Americans with Disabilities Act**

Employment discrimination claims brought under Title I of the Americans with

Disabilities Act (ADA) are subject to the remedies and procedures available in a Title VII action.

See 42 U.S.C. § 12117(a) (incorporating the procedures found in 42 U.S.C. § 2000e-5);  Conners

v. Me. Med. Ctr., 42 F. Supp. 2d 34, 46-47 (D. Me. 1999).  The Title VII procedural scheme

requires a would-be plaintiff to file suit within ninety days of receiving a notice.  Its language

reads:

> If a charge filed with the Commission pursuant to subsection (b) [charges of
> unlawful employment practices] is dismissed by the Commission, or if within one
> hundred and eighty days from the filing of such charge or the expiration of any
> period of reference under subsection (c) [involving state proceedings before a
> state administrative authority] or (d) [inapplicable here], whichever is later, the
> Commission has not filed a civil action under this section or the Attorney General
> has not filed a civil action in a case involving a government, governmental
> agency, or political subdivision, or the Commission has not entered into a
> conciliation agreement to which the person aggrieved is a party, *the Commission,
> or the Attorney General* in a case involving a government, governmental agency,
> or political subdivision, *shall so notify the person aggrieved and within ninety
> days after the giving of such notice a civil action may be brought* against the
> respondent named in the charge (A) by the person claiming to be aggrieved or (B)
> if such charge was filed by a member of the Commission, by any person whom
> the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1) (emphasis added).  As with the ADEA, the statutory reference to the

Commission is a reference to the EEOC, not the MHRC.  Under this procedural arrangement,

Plaintiff had ninety days following her receipt of notice from the EEOC to commence an action

under Title I of the ADA.  Lakshman v. Univ. of Me. Sys., 328 F. Supp. 2d 92, 100 n.12 (D. Me.

2004);  Pouliot v. Fairfield, 184 F. Supp. 2d 38, 52 (D. Me. 2002).

Defendant contends that the MHRC Notice is the operative notice, even for purposes of

Title VII, because the MHRC and the EEOC have a worksharing agreement with respect to

processing and investigating administrative charges.  However, the fact that the MHRC took no

9

action on Plaintiff's administrative charge would not preclude the EEOC from taking action on it.  Therefore, the EEOC notice is the operative notice when it comes to applying the ninety-day limitation provision found in Title VII.  In fact, in some federal circuits, including the First Circuit, receipt of the EEOC's notice is a precondition to administrative exhaustion and commencing suit.  See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) ("After filing the administrative complaint, the employee may sue in federal court only if the EEOC dismisses the administrative charge or if it does not bring a civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge.  However, the employee must wait for what is known as a right to sue letter.") (citation omitted).  In Abraham, the plaintiff filed his administrative charge with the Massachusetts Commission Against Discrimination based on that Commission's worksharing agreement with the EEOC.  Id. at 116 n.1.  The First Circuit assessed the timeliness of the plaintiff's civil action by referencing the EEOC's dismissal notice rather than the MCAD's notice, though the argument pressed by Defendant herein was not advanced in that case.  Id. at 119.

At least one other circuit court of appeals has squarely addressed the argument raised by Defendant and has held that receipt of the EEOC's notice is required absent proof from the defendant that the worksharing agreement between the state agency and the EEOC authorizes the state agency to issue right to sue letters on the EEOC's behalf.  Rodriguez v. Wet Ink, LLC, 603 F.3d 810, 812 (10th Cir. 2010) (holding that a right to sue notice from the Colorado Civil Rights Division did not start the limitation period for the plaintiff's Title VII claim because nothing in the applicable worksharing agreement authorized the CCRD to issue right to sue letters on the EEOC's behalf and because the EEOC retained discretion to make its own administrative

determination).  Defendant has not presented the Court with the worksharing agreement between the MHRC and the EEOC and therefore fails to support its affirmative defense.

As was stated in connection with the ADEA claim, Plaintiff commenced a civil action in state court within the ninety-day period running from her receipt of the EEOC's Notice, though the complaint she filed in state court did not recite a claim under the ADA.  Consequently, Plaintiff's ADA Title I claim in her amended complaint requires relation back to her original *pro se* pleading in order to be timely.  The relation back question is discussed below, in section F.

**E.      The Limitation Period of the Family Medical Leave Act**

The Family Medical Leave Act (FMLA) prohibits interference with the exercise of family medical leave rights provided in the Act and also discrimination in employment based on a person's opposition to a practice made unlawful under the Act.  29 U.S.C. § 2615(a).  An action to recover damages or equitable relief under the Act "may be brought . . . not later than 2 years after the date of the last event constituting the alleged violations for which the action is brought."  29 U.S.C. § 2617(c)(1).  However, the limitation period extends to three years if the action concerns a "willful violation."  Id.  § 2617(c)(2).

Plaintiff's FMLA discrimination claim is only timely if her complaint can be interpreted as alleging a willful violation.  Although Plaintiff does not expressly allege a "willful" violation under count VII of her amended complaint, all of the other claims in her action entail an allegation of harassment based on discriminatory animus.  In my view, there is nothing inherently implausible about drawing an inference that Defendant willfully violated the FMLA in this context.  Plaintiff's FMLA discrimination/interference claim in count VII is not subject to summary dismissal based on Defendant's statute of limitations defense, though the willfulness question might resurface at summary judgment or on a special verdict.

11

F.      The Relation Back Rule

Whether an amended pleading may satisfy a statute of limitation by "relation back" to an earlier-filed pleading is governed by Rule 15(c) of the Federal Rules of Civil Procedure.[3] Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2489 (2010).  The Rule provides a list of three alternative grounds under which "[a]n amendment to a pleading relates back to the date of the original pleading."  Fed. R. Civ. P. 15(c)(1).  Among these is the rule allowing relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).[4]  Plaintiff's amended complaint clearly satisfies this condition and, therefore, relation back is appropriate.

In its reply memorandum on the motion to dismiss, Defendant contends that there can be no relation back because the MHRA claims in the original pleading were time barred when filed and, therefore, that pleading "never existed."  (Def. Reply at 5, ECF No. 12.)  The notion that the pleading "never existed" because it recited only time-barred legal theories is novel and Defendant cites no authority for it.  I reject this argument.  In my view, the original complaint and all of its factual allegations clearly "existed," whether or not it recited timely causes of action under state law.  See Vaz v. United Airlines Corp., No. 11-CV-3816, 2011 U.S. Dist. Lexis 138053, *2-4, 2011 WL 6019012, *2 (E.D.N.Y. Nov. 30, 2011) (Weinstein, J.) (allowing relation back to bring Title VII claim within the ninety-day window and rejecting a defendant's argument that relation back not be allowed because the initial legal theory was not viable).  By

---

[3]      Note that Maine's relation back rule is consistent with the federal rule, in case the Court is concerned that Maine law might govern based on the fact that Plaintiff filed her amended complaint in state court.  Me. R. Civ. P. 15(c).  See TD Banknorth, N.A. v. Hawkins, 2010 ME 104, 5 A.3d 1042, 1047 n.5;  M. R. Civ. P. 15 advisory committee's note to 1993 amend. (noting that the rule "prevent[s] parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense").

[4]      Additional conditions apply if the amended pleading attempts to change a party or name a new party.  Fed. R. Civ. P. 15(c)(1)(C);  Morel v. Daimler-Chrysler AG, 565 F.3d 20, 25-26 (1st Cir. 2009).

virtue of the relation back rule, Plaintiff's ADEA and ADA claims are timely because the original pleading was filed within ninety days of Plaintiff's receipt of the EEOC Notice and the claims asserted by amendment relate back to the original filing date.

## G.     Equitable Tolling

Plaintiff maintains that equitable tolling will make her state law claims timely.  In federal law, "the baseline rule is that time limitations are important in discrimination cases, and that federal courts therefore should employ equitable tolling sparingly." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999).  "[E]quitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control." Id. at 279.  Maine law is consistent with federal law on this issue.  Maine common law holds that a limitation period may be tolled by a court if allowing it to run would be inequitable. Dasha by Dasha v. Me. Med. Ctr., 665 A.2d 993, 995 n.2 (1995).  At the same time:  "Statutes of limitation are statutes of repose and . . . should be construed strictly in favor of the bar [they were] intended to create." Harkness v. Fitzgerald, 1997 ME 207, ¶ 5, 701 A.2d 370, 372.  It is generally recognized that "equitable tolling will not 'rescue a plaintiff from his or her lack of diligence.'" Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011) (quoting Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009)).

Plaintiff maintains that she experienced a state of confusion after receiving two letters from the MHRC and a third letter from the EEOC.  In effect, she would have the court toll the limitations clock for the time between the first letter she received—the actual MHRC right to sue notice—and the second letter telling her that her charge was dismissed.  Her position is that it was reasonable for her to rely on statements from attorneys indicating that she had until August 24 to file, which is a ninety-day deadline measured from the second MHRC letter rather than the

MHRC's May 4 Notice.[5]  These circumstances do not justify equitable tolling.  This is not a case involving an ambiguous claim accrual date, as most of the equitable tolling cases are.  Nor is there evidence that Plaintiff's delay and confusion arose from anything Defendant did.  Most significantly, even if the Court accepts Plaintiff's argument, Plaintiff's affidavit clearly reflects that she was advised by more than one attorney to file her case by August 24, 2011, but still failed to file until August 25.  Although the advice Plaintiff received was mistaken, Plaintiff still failed to meet the ninety-day deadline that she was advised to meet.  Application of the statutory bar is not inequitable on these facts.

## H.    The Motion to Strike

Defendant has filed a motion to strike "all documents in the form of affidavit or otherwise . . . that offer an opinion of a legal determination, such as the interpretation of the language of the Right-to-Sue (RTS) notice and the May 26, 2011, letter issued by the Human Rights Commission to Plaintiff."  (Mot. to Strike at 1, ECF No. 11.)  In its reply, Defendant states that it "does not object to Plaintiff Richards' attachments to the extent they relay facts surrounding Plaintiff's communication with the Human Rights Commission," and only wants the Court to "strike and/or exclude the statements of opinion in the nature of expert testimony in Attorney Gause's affidavit and a letter from Attorney Lisa Butler."  (Def. Reply re Mot. to Strike at 2, ECF No. 14.)  The only item of evidence that deserves a request to strike is the final paragraph of Attorney Gause's affidavit.  I agree with Defendant that Attorney Gause's affidavit is designed, ultimately, to supply an opinion that the MHRC's former practice of issuing a

---

[5]    Plaintiff argued in her written submission that she actually had until August 25 to file because the day of the act that triggered the running of the period is excluded.  (Pl. Opposition at 5 n.2, ECF No. 10.)  Plaintiff is correct that May 26 would be excluded, if it were the applicable start date, but she is incorrect when she says that a ninety-day count would make August 25 the ninetieth day.  During a May 23, 2012, telephone conference addressed to the pending motions, plaintiff's counsel acknowledged his calculation error and admitted that he had made a mistake in his written submission, though he was not ready to concede that his equitable tolling argument could not supply one additional day.

dismissal letter after issuing a notice to right to sue is confusing, even for attorneys.  The Court might sustain the objection as inappropriate opinion evidence, but I see no reason to "strike" the affidavit or its exhibits.  Even if the opinion is considered, the evidence is insufficient to support equitable tolling under the circumstances.  For purposes of resolving the motion on the docket, the motion to strike is denied.

## CONCLUSION

For the reasons stated above, I RECOMMEND that the Court GRANT, IN PART the Motion to Dismiss (ECF No. 7), DISMISS count I and count IV as time-barred, and DENY the Motion to Dismiss as to all of the federal counts.  The Motion to Strike (ECF No. 11) is DENIED.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 25, 2012                              /s/ Margaret J. Kravchuk
                                         U.S. Magistrate Judge